# LUMBER SALES, INC., v. JULIOUS BROWN, d/b/a Julious Brown Lumber Company.
## —469 S.W.2d 888.

Middle Section. February 26, 1971.

Certiorari Denied by Supreme Court August 16, 1971.

William L. Underhill and Charles Patrick Flynn, of Lester, Hildebrand, Nolan, Lane, Underhill & Mondelli, Nashville, for plaintiff-appellee.

Gail P. Pigg, Nashville, for defendant-appellant.

PURYEAR, J. Plaintiff sued the defendant for $5,163.23 alleged to be due and owing to plaintiff for a carload of lumber sold by plaintiff to defendant.

To plaintiff's declaration, the defendant first filed a plea of nil debit and later filed a plea interposing the defense of failure to comply with the statute of frauds requiring contracts for sale of goods of $500.00 or more to be evidenced by written contract.

The plaintiff contends and defendant admits that on or about the 6th day of November, 1968, the defendant agreed to purchase from plaintiff five carloads of lumber, which the plaintiff agreed to sell and deliver to defendant at a certain railroad siding near Radnor Yards in Nashville, Tennessee, which siding was known and designated by the railroad carrier as No. 609-A.

Plaintiff contends that all five carloads of lumber were delivered to defendant at said railroad siding in Nashville, Tennessee, and the defendant admits that four carloads thereof were received by him, but he denies that the fifth carload of lumber, which was to consist of two by four pine studs, was ever delivered to him or received by him.

The plaintiff's contention that this fifth carload of lumber was duly delivered to defendant and the defendant's denial that same was delivered to or received by him is the substance of the controversy between the parties.

The case was tried upon oral testimony and documentary evidence before Honorable Sam L. Felts, Jr., Circuit Judge, without the intervention of a jury, on January 21, 1970, as a result of which trial the Circuit Judge found the issue in favor of plaintiff and against defendant and rendered a judgment in favor of plaintiff in the

sum of $5,163.20 and costs, from which judgment the defendant has prayed and perfected an appeal and filed a single assignment of error as follows:

"The trial court erred in rendering a judgment for plaintiff, as plaintiff failed to deliver the lumber in question to defendant as required by the sales provisions of the Uniform Commercial Code. In the absence of delivery, as therein spelled out, the seller must bear the risk of loss."

It will be seen from the foregoing assignment of error, that the defendant no longer relies upon the defense of failure to comply with the Statute of Frauds.

The railroad siding at which the lumber was to be delivered, according to agreement of the parties, is located about one-half mile from the defendant's place of business and is known as a "team track" which designation means that it is available for use by several parties, which in this case, included the defendant. Track location 609-A on this siding is a point where a loading platform is located.

The uncontroverted evidence shows that during the early morning hours of November 27, 1968, the Louisville and Nashville Railroad Company, to which we will hereafter refer as the carrier, placed a boxcar loaded with lumber consigned to the defendant on this siding at track location 609-A.

This boxcar was designated as NW54938 and it was inspected by an employee of the carrier between 8:00 A.M. and 8:30 A.M. on November 27, 1968, at which time

it was found loaded with cargo and so designated upon the carrier's records.

At 11:07 A.M. on November 27, 1968, the carrier notified one of defendant's employees that the carload of lumber had been delivered at track location 609-A.

At approximately 4:00 P.M. on that same day an employee of the carrier again inspected this boxcar at track location 609-A, found one of the seals on it to be broken and resealed it at that time. The evidence does not show whether the car was still loaded with cargo at that time or not.

The following day, November 28th, was Thanksgiving Day and the record does not disclose that the carrier inspected the boxcar on that date. But on November 29, 1968, between 8:00 A.M. and 8:30 A.M. an employee of the carrier inspected the car and found it empty.

From evidence in the record before us it is impossible to reach any logical conclusion as to what happened to this carload of lumber without indulging in speculation and conjecture, but the defendant earnestly insists that he did not unload it and there is no evidence to the contrary.

Counsel for defendant insists that the transaction involved here is governed by provisions of the Uniform Commerical Code and we agree that it is.

The particular Code Section applicable here is Subsection (1) of T.C.A. sec. 47-2-509, as follows:

"47-2-509. *Risk of loss in the absence of breach.*—(1) Where the contract requires or authorizes the seller to ship the goods by carrier (a) (this portion not applicable) (b) if it does require him to deliver them at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the buyer when the goods are there duly so tendered as to enable the buyer to take delivery."

The trial Court held that the risk of loss in this case did, in fact, pass to the defendant buyer.

Now let us further examine the evidence for the purpose of determining whether or not it preponderates against this conclusion of the trial Court.

There is competent evidence in the record which shows that on November 27, 1968, at 11:07 A.M. the carrier notified the defendant's employee, Mr. Caldwell, at defendant's business office, that the carload of lumber had been delivered at track location 609-A. Mr. Caldwell did not testify, so this evidence is uncontroverted.

There is no evidence in the record to the effect that the defendant declined to accept delivery at that time or asked for a postponement of such delivery until a later time.

The defendant testified that it would normally require about four or five hours for him and his employees to unload a carload of lumber and that on November 27, 1968, he and his employees were so busily engaged in other necessary work that he could not unload the lumber on that day and since the following day was Thanksgiving,

he could not unload it until November 29th, at which time, of course, the carrier found the car to be empty.

The defendant also testified, on cross-examination, as follows:

"Q. Mr. Brown, did you, in fact see NW 54938?

A. I did see that car somewhere on some track.

Q. And that was at Radner Yard?

A. I said I seen the car on some track because I have a crossmark where I have seen the car. When I see a car I put a crossmark. When I unload a car I mark him out.

Q. All right, Mr. Brown, let me ask you this: Is this your records right here?

A. Yes.

(Tendering documents.)

Q. All right, sir, so you have—now, these are your business records?

A. Yes, sir, I keep that in my car, I go by the railroad and check for my cars. I knew several cars were coming in at that time.

Q. Yes, sir, and you keep this memo in your car?

A. In my car, so when I go to breakfast I go by and check; when I go to lunch I go by and check. At night I check. I carry the bookkeeper home. I have a night-

time bookkeeper and when I carry the bookkeeper home I go by and check.

Q. All right, sir, you put down in your book N&W 54938 and do you put a check by it, is that correct, sir?

A. That is correct.

Q. All right.

A. That shows I have seen the car.

Q. You have physically seen the car?

A. Yes.

Q. Now, does that mean, also, that you have opened the door on the car to check its contents?

A. No, sir, it does not.

Q. Then when you have unloaded it you scratch it off, is that correct, sir?

A. That is right, sir." (B. of E. pp. 90, 91)

One Kenneth E. Crye, freight agent of the carrier, Louisville and Nashville Railroad Company, testified that on Thanskgiving Day, November 28th, he saw what he believed to be a railroad car being unloaded at track location 609-A, but he could not identify the car or the persons whom he believed to be unloading it. He qualified this testimony by saying that he was not positive that the car was being unloaded, but there was some lumber

and some kind of activity on the platform, none of which appeared to be unusual.

From evidence in the record, a trier of fact could logically form one of two inferences:

(1) That the lumber was either stolen or unloaded by mistake by someone other than the defendant at some time between 8:30 A.M. and 11:07 A.M. on November 27th; or (2) that it was stolen or unloaded at some time after 11:07 A.M. November 27th and 8:30 A.M. November 29th.

If the first inference should be formed then the issue should be found in favor of defendant, but if the second inference should be formed, then the issue should be found in favor of plaintiff if it could also be found that the loss occurred after defendant had sufficient time to protect himself against loss after notice of delivery.

We think the second inference is the more logical of the two, especially in view of the difference between the two intervals of time and also in view of Mr. Crye's testimony to the effect that on Thanksgiving Day, November 28th, he observed some activity at track location 609-A, which he believed to be unloading of a railroad car at that location.

Of course, we recognize and adhere to the rule that the burden of proof is upon plaintiff to prove delivery of the lumber and we are not required to indulge either of the above mentioned inferences because the trial Court apparently concluded that the plaintiff had successfully carried the burden of proof with which he

was onerated and the evidence does not preponderate against that Court's conclusion.

■ Counsel for defendant argues that the lumber in question was not duly *"so tendered as to enable the buyer to take delivery"* as required by T.C.A. sec. 47-2-509.

However, this argument seems to be based upon the premise that it was not convenient for the defendant to unload the lumber on November 27th, the day on which it was delivered at track location 609-A and defendant was duly notified of such delivery.

This was an ordinary business day and the time of 11:07 A.M. was a reasonable business hour. If it was not convenient with the defendant to unload the lumber within the few hours after being duly notified of delivery, then he should have protected himself against risk of loss by directing someone to guard the cargo against loss by theft and other hazards.

To hold that the seller or the carrier should, under the circumstances existing in a case of this kind, continue to protect the goods until such time as the buyer may find it convenient to unload them would impose an undue burden upon the seller or the carrier and unnecessarily obstruct the channels of commerce.

■ The language of sub-section (1) (b) of T.C.A. sec. 47-2-509 does not impose such a burden upon the seller, in the absence of some material breach of the contract for delivery, and we think a reasonable construction of such language only requires the seller to place

the goods at the buyer's disposal so that he has access to them and may remove them from the carrier's conveyance without lawful obstruction, with the proviso, however that due notice of such delivery be given to the buyer.

Counsel for the defendant cites Parish and Parish Mining Co. v. Serodino, Inc. et al. (1963), 52 Tenn.App. 196, 372 S.W.2d 433, but that case is not applicable here for two reasons. First, it was decided prior to the effective date of the Uniform Commercial Code in Tennessee and second, because the factual situation in that case is not analogous to the factual situation in the instant case.

In Parish v. Serodino, the Court considered the question of whether or not the risk of loss of a quantity of phosphate had passed to the consignee, Tennessee Valley Authority, at the time such loss occurred. The phosphate was loaded upon two barges which were docked for unloading at a terminal at Wilson Dam, Alabama, at 5:15 on Sunday morning.

The barges were leaking at the time they were docked and they sank at some time before 2:00 P.M. on that same day. There was also some doubt as to whether or not a proper official of the Tennessee Valley Authority had been notified that the barges had been docked.

In determining that the risk of loss had not passed to the consignee, Tennessee Valley Authority, the Court pointed out that the barges were leaking at the time of docking and that Sunday was a non-working day of Tennessee Valley Authority.

200

For the foregoing reasons herein set forth, the assignment of error is respectfully overruled and the judgment of the trial Court is affirmed.

The defendant-appellant will pay all of the costs of this appeal.

Shriver, P. J. (M.S.), and Todd, J., concur.